FILED
2015 Jul-01  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DUANE FANNING, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  2:13-CV-1957-VEH-HGD** |
| | ) | |
| **DENNIS JOHNSON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

| | | |
|---|---|---|
| **DUANE FANNING, II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  2:13-CV-2126-VEH-HGD** |
| | ) | |
| **D. BROWN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Duane Fanning, II, filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he had been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the Donaldson Correctional Facility in Bessemer, Alabama.  The

named defendants in this action are Correctional Lieutenant Michael Wheat; Correctional Sergeant Joshua Murphree; and Correctional Officers Christopher Simpson, Steven Harrison,[1] Rickey Cunningham, Dennis Johnson, Jason Smith, and Daryl Brown.  The plaintiff seeks compensatory damages.

## I.  Procedural History

On November 22, 2013, the court entered an Order for Special Report directing that copies of the complaint be forwarded to the named defendants and requesting they file a special report addressing the plaintiff's factual allegations.[2]  The parties were advised that the special report, if appropriate, might be construed as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  On April 25, 2014, the defendants filed a special report accompanied by affidavits and copies of certain prison administrative and medical records pertaining to the plaintiff.  (Doc. 22).  On October 24, 2014, the parties were notified that the court would construe the defendants' special report as a motion for summary

---

[1] In the complaint, plaintiff names Officer Harris as a defendant in this action.  However, a review of the record reveals the defendant's correct name is Officer Harrison.

[2] Finding that the issues to be resolved in the plaintiff's Case No. 2:13-cv-1957-VEH-HGD and Case No. 2:13-cv-2126-VEH-HGD are substantially similar, the court entered an order on February 5, 2014, consolidating the two cases and instructing the defendants to address all issues in both cases in their special report. (Doc. 16).  For purposes of this review, the cited document numbers correspond to Case Number 2:13-cv-1957-VEH-HGD, unless otherwise noted.

judgment and the plaintiff was notified that he would have twenty (20) days to respond to the motion by filing affidavits or other material if he chose.  The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  No response has been filed by the plaintiff.  This matter is now before the court on the defendants' special report (doc. 22) being construed as a motion for summary judgment.

## II.  Standard of Review

Because the special report of the defendants is being considered a motion for summary judgment, the Court must determine whether the moving parties, the defendants, are entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movants are entitled to judgment as a matter of law.  *Federal Rule of Civil Procedure 56.*  In making that assessment, the Court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving parties.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving parties to establish *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that they are due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that

initial burden has been carried, however, the non-moving party may not merely rest upon his pleadings, but must come forward with evidence supporting each essential element of his claim. *Celotex, supra*, *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claims, all other issues of fact become immaterial, and the moving parties are entitled to judgment as a matter of law. *Celotex*, *supra*; *see also Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit explained in *Bennett*:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

### III.  Factual Assertions

The following facts are undisputed, or if disputed, taken in a light most favorable to the non-moving party, the plaintiff.

The plaintiff is a prisoner in the custody of the Alabama Department of Corrections.  On October 5, 2013, he was housed in the Donaldson Correctional Facility in Bessemer, Alabama.  At approximately 7:30 p.m. that evening, defendants Johnson and Simpson were involved in the process of escorting inmates of G-Dorm to the showers.  (Docs. 22-3 and 22-2).  After Johnson and Simpson handcuffed the plaintiff behind his back and opened his cell door, the plaintiff exited the cell and spit in the face of Johnson, who immediately performed a "routine take down," placing the plaintiff on the floor.  *Id*.  The plaintiff then began to struggle with Johnson, kicking and attempting to head butt him, at which point Simpson assisted by pushing the plaintiff's face to the floor with his forearm, while Johnson placed his weight on the plaintiff to hold him down.  (Docs. 22-3 at 2; and 22-4 at 2).[3]  Officers Johnson and Simpson testify that these events were "particularly dangerous" because of the small space in which they were occurring.  *Id*.

Upon hearing the commotion, Officer Harrison, who was conducting shower call on the top tier, immediately started down the stairs and called for backup.  (Doc. 22-5).  When he arrived on the scene, Johnson and Simpson were still trying

---

[3] In his complaint, the plaintiff alleges Simpson "repeatedly punched downward on [his] face."  (Doc. 1 at 3).  However, he has presented nothing to refute the defendants' affidavits, which state unequivocally that no officer punched, kicked, or struck the plaintiff in any way.  (Docs. 22-3 at 2; 22-4 at 2; 22-5 at 2; 22-6 at 2; 22-7 at 2; 22-8 at 2).

to gain control over the plaintiff, who was "struggling and kicking." *Id*. at 2. Harrison assisted by grabbing the plaintiff's legs, who then "became compliant" shortly thereafter. *Id*. at 2.[4]

Sergeant Murphree testifies that he responded to the "Code Red" call and arrived on the scene to find Johnson, Simpson, and Harrison attempting to control the plaintiff. (Doc. 22-6). Murphree and Simpson lifted the plaintiff to his feet as he continued to resist. *Id*. at 2.[5] Murphree then placed him against the wall and ordered him to calm down. *Id*. at 2.[6] After the plaintiff stopped resisting, Murphree and the East Hall rover, Officer Etheridge (not a named defendant), escorted the plaintiff to

---

[4] The plaintiff alleges in the complaint that Officer Harrison "stood over [his] head and cracked [his] skull" by striking him numerous times with a "police stick." (Doc. 1 at 3). Not only are these allegations inconsistent with the injuries noted on the body chart (doc. 22-11 at 5), but the plaintiff fails to refute Harrison's testimony that he never took his baton from its holster and that he never struck the plaintiff in any manner. (Doc. 22-5 at 2).

[5] In the process of lifting the plaintiff off the floor, he accidently hit his head on the open tray door. (Doc.'s 22-6 at 2; 22-3 at 2).

[6] The plaintiff alleges that Sergeant Murphree and Officers Cunningham and Brown punched him in the nose several times after he stood up. (Doc. 1 at 2). He also states that before going into the infirmary, Officer Smith "re-broke" his rib by landing "numerous blows to [his] body," and that Cunningham "repeatedly kicked [his] knee inwardly" in an attempt to break it. *Id*. at 2. However, he fails to refute their affidavits in which they deny ever hitting, kicking, or punching him. (Docs. 22-6 at 2; 22-8 at 2; 22-9 at 2; 22-10 at 2). In fact, as discussed *infra*, Cunningham, Brown, and Smith testify they had no direct contact with the plaintiff on that occasion.

the East barber shop where he was held until he could be examined by medical personnel.  *Id*. at 2.[7]

Lieutenant Wheat arrived on the scene as Murphree and Etheridge were escorting the plaintiff out of the dorm.  (Doc. 22-7).  Contrary to the plaintiff's allegations, Lieutenant Wheat testifies he did not witness the incident and did not observe anyone kick or strike the plaintiff in any way.  *Id* at 2.  Wheat explains that because plaintiff's injuries did not appear serious, he was held in the barber shop while the officers involved were seen by medical personnel.  *Id* at 2.[8]  While the plaintiff was waiting in the barber shop before being sent to the infirmary, he admitted to Lieutenant Wheat that he spit into Officer Johnson's face.  *Id* at 2.

Correctional Officers Cunningham, Brown, and Smith responded to the "Code Red" by immediately proceeding to the G-dorm.  However, they each were met in the hallway by a supervisor who informed them that the incident was under control.  Officer Cunningham states that he was still present in the hallway when the plaintiff was being escorted out of the dorm by two officers.  However, he testifies he was not close enough to "even identify the officers . . . much less punch [the plaintiff]." (Doc.

---

[7] According to the officers involved, the entire incident lasted approximately one minute. (Docs. 22-3 at 2; 22-4 at 2).

[8] Wheat states that when an inmate has not been seriously injured, it is protocol to allow officers to be seen first by medical personnel, so that the officers can continue with their shift duties. (Doc. 22-7 at 2).

22-8 at 2).  Brown testifies he returned to his post without ever seeing the plaintiff that day (doc. 22-9 at 2), while Smith states he returned to his post and was never in the same room as the plaintiff. (Doc. 22-10 at 2).  The plaintiff offers nothing to refute these officers' affidavits.

The plaintiff was eventually taken to the infirmary where a body chart was prepared, noting the plaintiff's injuries which included two half-inch abrasions on his left shoulder, a contusion to his left side, a half-inch abrasion on the crown of his head, a one-inch abrasion to the left side of his neck, and bleeding from his nose. (Doc. 22-11 at 5).  Additionally, an October 11, 2013, x-ray of the plaintiff's chest was found to be normal, which is wholly inconsistent with his allegation that he sustained a broken rib.  *Id* at 14.

## IV.  Analysis

Maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520 (1979).  Prison officials must therefore be free to take appropriate action to insure the safety of inmates and staff, and the courts will not normally second-guess prison officials on matters involving internal security.  *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998).  When disciplinary action is taken by a prison official to prevent a security

threat or to restore official control, the court's Eighth Amendment inquiry focuses on whether force was applied in a good faith effort to maintain or restore discipline or was undertaken maliciously or sadistically to cause harm.  *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994).  The factors to be examined in determining whether the use of force was wanton and unnecessary include an evaluation of:  1) the need for the application of the force; 2) the relationship between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

In the present case, the plaintiff has failed to establish a genuine issue of fact with respect to any of the four *Hudson* factors cited above.  The plaintiff has failed to present evidence to rebut the defendants' clear showing that there was a need for the application of force at the time it was applied and that the severity of the force used was tempered to meet the circumstances.  As stated above, prison officials may take appropriate action to ensure the safety and security of the institution.  In this instance, the plaintiff has failed to rebut the defendants' special report which presents specific facts indicating the plaintiff spit into the face of a correctional officer and struggled with officers when they attempted to gain control over him.  The defendants have therefore set forth unrefuted facts which show that the use of force was

warranted.  Having presented nothing in response to the special report, the plaintiff has failed to create a genuine issue of fact with regard to whether or not the defendants' actions were undertaken for reasons other than a good faith effort to maintain security and restore order.[9]

Additionally, the defendants have set forth specific facts which demonstrate that the amount of force used was reasonably related to the threat faced under the circumstances.  As stated earlier, maintaining safety and security in a prison or jail setting is an essential goal of a prison or jail administration.  *Bell*, *supra*.  Therefore, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," and those administrators should be accorded "wide ranging deference" with respect to measures taken in response to actual confrontations with

---

[9] There is authority for the proposition that the specific facts in a plaintiff's sworn complaint can sometimes be asserted in response to a motion for summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  However, in this instance, the plaintiff's complaint is contradicted by the unequivocal testimony in the several affidavits submitted with defendants' special report, by the incident report prepared by jail staff on the day of the events, and by the medical record.  (The court fails to find anything in the medical record which confirms the injuries alleged by the plaintiff in his complaint, *i.e*, broken nose, broken rib, or cracked skull). Although it is not proper for this court to weigh the evidence when ruling on a motion for summary judgment, our courts have recognized that in certain circumstances a party's version of the facts can be discounted when it is blatantly contradicted by the record and to the extent that "no reasonable jury could believe it."  *Vicks v. Knight*, 380 Fed.Appx. 847, 852 (11th Cir. 2010), *citing Scott v. Harris*, 550 U.S. 372, 380 (2007).  In *Vicks*, the Eleventh Circuit affirmed the granting of summary judgment in favor of prison guards notwithstanding the fact that their version of events was in direct contradiction to the inmate's complaint and affidavit.  Despite this apparent issue of fact, the court found that summary judgment was proper because the plaintiff's version of events was "contradicted by all the relevant evidence, with the exception of his own affidavit." *Id*.

inmates. *Whitley v. Albers*, 475 U. S. 312, 321-22 (1986), *quoting Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981). In this case, the defendants have presented facts which show a reasonable relationship between the need for and the amount of force used. Once the defendants established that relationship with specific, factual affidavits, the plaintiff was obliged to counter those facts with something more than the allegations set forth in his complaint.

The third *Hudson* factor to be examined in an excessive force claim is whether or not a responsible official would have reasonably perceived a threat under the circumstances. Again, the defendants have provided the court with specific facts in that regard. Their affidavits state that the plaintiff spit into the face of an officer and that he continued to resist when officers attempted to control him. Furthermore, the defendants state that the plaintiff's behavior was "particularly dangerous" because of the small area in which the events took place (doc. 22-3 at 2) and that a handcuffed inmate can still present a danger to officers because of his ability to bite, kick, and head butt. (Doc. 22-5 at 2). By contrast, the plaintiff has presented nothing to rebut the defendants' special report with regard to these issues. Therefore, the specific and undisputed facts before the court clearly show that the defendants acted reasonably in assuming they faced a security and safety threat from the plaintiff.

Finally, *Hudson* requires the court to examine the facts as they relate to the defendants' efforts to temper the severity of the response.  In that regard, the defendants testify without refute that the incident lasted for no more than approximately one minute and that the plaintiff was immediately escorted to the barber shop to await medical examination.  The defendants state unequivocally that no officer kicked, punched, or struck the plaintiff in any way and that the use of force ended when he was under control, at which point he was escorted out of the dorm.[10]  Furthermore, the injuries to the plaintiff as noted in the medical record are consistent with the type of scuffle described in the defendants' special report and are blatantly inconsistent with the allegations set out in the complaint.[11]  Once the defendants presented specific facts to show that the use of force was necessary, reasonable, and tempered under the circumstances, it was incumbent upon the plaintiff to come forth with specific facts in rebuttal.  Having failed to do so, his claims are due to be dismissed.

---

[10] The defendants acknowledge the plaintiff inadvertently hit his head on the open tray door as they were lifting him off the ground.  However, this is not evidence of excessive force, even if the plaintiff was under control at the time.  The subjective component of an Eighth Amendment claim requires a showing that a defendant acted with a "sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8.  These facts do not satisfy this subjective component.

[11] As noted earlier, the plaintiff has pointed to nothing in the medical record which corroborates his assertion that he suffered a broken nose, a fractured skull, and a broken rib.

## V.  Conclusion

Accordingly, for the reasons stated above, the court finds the defendants'

special report shall be treated as a motion for summary judgment and, as such, that

it is due to be **GRANTED** and this action **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this 1st day of July, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge